The Honorable Billy Joe Purdom State Representative Route 1, Box 135B Yellville, Arkansas 72687-9728
Dear Representative Purdom:
This official Attorney General opinion is issued in response to your recent question regarding the effect of a "marriage agreement."
You indicate that your inquiry concerns a marriage agreement that is between a male and a female; is worded in contract form; states the parties' religious beliefs; indicates that the marriage ceremony was performed by a licensed minister; and is witnessed, notarized, and recorded in the appropriate county. With regard to this agreement, you have asked:
 Will the State of Arkansas recognize the terms and conditions of a marriage agreement not just to establish the validity of the marriage, but also as a valid contract agreed upon by both parties?
Although you have not explicitly so indicated, it appears that the "marriage agreement" about which you have inquired is a written document and is in the nature of an antenuptial agreement.
The State of Arkansas does recognize antenuptial agreements as valid, enforceable contracts when they are in compliance with the statutes governing such agreements.
Antenuptial agreements (or premarital agreements) are governed by the provisions of A.C.A. § 9-11-401 et seq. (The Arkansas Premarital Agreement Act). That Act sets forth various formal and substantive requirements for valid premarital agreements.
Premarital agreements must be in writing and signed and acknowledged by both parties.
The content of such agreements must be in accordance with A.C.A. § 9-11-403, which states:
(a) Parties to a premarital agreement may contract with respect to:
 (1) The rights and obligations of each of the parties in any of the property of either or both of them whenever and wherever acquired or located;
 (2) The right to buy, sell, use, transfer, exchange, abandon, lease, consume, expend, assign, create a security interest in, mortgage, encumber, dispose of, or otherwise manage and control property;
 (3) The disposition of property upon separation, marital dissolution, death, or the occurrence or nonoccurrence of any other event;
(4) The modification or elimination of spousal support;
 (5) The making of a will, trust, or other arrangement to carry out the provisions of the agreement;
 (6) The ownership rights in and disposition of the death benefit from a life insurance policy;
(7) The choice of law governing the construction of the agreement; and
 (8) Any other matter, including their personal rights and obligations, not in violation of public policy or a statute imposing a criminal penalty.
 (b) The right of a child to support may not be adversely affected by a premarital agreement.
A.C.A. § 9-11-403.
A premarital agreement is not enforceable if the party against whom enforcement is sought proves that:
(1) The party did not execute the agreement voluntarily; or
 (2) The agreement was unconscionable when it was executed and, before execution of the agreement, that party:
 (i) Was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;
 (ii) Did not voluntarily and expressly waive after consulting with legal counsel, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and
 (iii) Did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party.
A.C.A. § 9-11-406(a). The Act goes on to provide as follows regarding the enforcement of premarital agreements:
 (b) If a provision of a premarital agreement modifies or eliminates spousal support and that modification or elimination causes one party to the agreement to be eligible for support under a program of public assistance at the time of separation or marital dissolution, a court, notwithstanding the terms of the agreement, may require the other party to provide support to the extent necessary to avoid that eligibility.
 (c) An issue of unconscionability of a premarital agreement shall be decided by the courts as a matter of law.
A.C.A. § 9-11-406(b) and (c).
Two other matters must be noted. First, as indicated in Op. Att'y Gen. No. 96-362, the existence of a marriage agreement can constitute evidence that would help in establishing the validity of a marriage in a situation where the required formalities were inadvertantly not complied with. However, if the parties did not act in good faith, and intentionally failed to comply with the applicable marriage formality statutes, it is unlikely that a court would recognize the existence of the marriage agreement as a sufficient basis upon which to establish the validity of the attempted marriage.
Second, it should be noted that the breach of a marriage contract does not have the effect of dissolving a valid marriage. Under Arkansas law, a marriage can only be dissolved through annulment or divorce. Mabry v.Mabry, 259 Ark. 622, 535 S.W.2d 824 (1976).
The question of whether any particular marriage agreement is in compliance with the Arkansas Premarital Agreement Act is a question of fact which can only be answered after reviewing the specific terms of the agreement and all of the circumstances under which it was executed. Such a review is beyond the scope of an Attorney General opinion. I therefore cannot opine conclusively regarding the particular marriage agreement about which you have inquired. Nevertheless, the foregoing should provide you with the appropriate legal basis upon which to analyze the agreement.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh